UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELIMINATOR, INC., F/V Miss
Amy J,

    Plaintiff,

v.                                      Case No.:   2:20-cv-208-SPC-NPM

SOUTHERN BELLE FISHING,
LLC, F/V SOUTHERN BELLE II,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Southern Belle Fishing, LLC, F/V Southern Belle II, XL Specialty Insurance Company, and Navigators Insurance Company's ("Movants") Motion for Summary Judgment (Doc. 62), along with Plaintiffs Eliminator, Inc. and F/V Miss Amy J's opposition (Doc. 69)[2] and the Movants' reply (Doc. 71). Also before the Court is Movants' Motion to Strike Affidavit of Dennis Henderson, Plaintiffs' corporate representative, (Doc. 72), along with Plaintiffs opposition (Doc. 73). For the below reasons, the Court denies in part

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Although Plaintiffs' response disregards Local Rule 1.08's typography requirements, the Court will still accept it as filed. But Plaintiffs should not expect the Court's future leniency in overlooking violations of the Local Rules.

and grants in part the Motion for Summary Judgment and denies the Motion to Strike.

## BACKGROUND

This case is about who's to blame for two shrimping vessels colliding on the Gulf of Mexico. Plaintiffs own one ship: F/V Miss Amy J.; Defendants own the other: F/V Southern Belle II. Each side says the other's negligence caused the crash. In laying blame, the parties differ on why the collision happened. So the Court will recount the undisputed facts and note when the parties vary.

The collision occurred almost three years ago in the early morning. The Southern Belle was traveling southwest at about 3.4 knots, and the Miss Amy was traveling northeast at about 8.2 knots. One captain and two deckhands crewed the Miss Amy. Although the Miss Amy crew had some commercial fishing experience, it was everyone's maiden voyage on the vessel. But the same can't be said for the Southern Belle, who had two captains and two deckhands on board. They all had crewed the Southern Belle before, and the two captains were father and son.

When the Miss Amy was within about five nautical miles of the Southern Belle, the Southern Belle's automatic identification system ("AIS") alerted the on-duty captain, Tam Tuan Phan, of the potential collision target. In response, Captain Phan radioed the Miss Amy over a general channel. He said, "Miss

Amy J, Miss Amy J, can you hear me? Come back. What course are you heading? Come back." (Doc. 62-1 at 36:13-18). The Miss Amy did not respond.

Because Captain Phan knew the vessels would collied without course changes, he twice shifted the Southern Belle due south and decreased its speed. He also tried radioing the Miss Amy three more times. When those attempts failed, Captain Phan blared a foghorn and shined a spotlight at the Miss Amy's wheelhouse. He got no response. Captain Phan then decreased to idle speed.

But the Miss Amy wasn't oblivious to the developing situation. At some point, its captain, Steven Swendsen, saw the Southern Belle on his radar and AIS. (Doc. 69). In response, he made three ten-degree starboard course adjustments to avoid a collision. After the last adjustment, Captain Swendsen left the steering house. (Doc. 69 at 2, ¶ 16).

Neither vessel's adjustments worked because the Southern Belle's bow rammed into the Miss Amy's wheelhouse. The Miss Amy sustained nearly a quarter of a million dollars in damages.

Plaintiffs have thus sued Defendants for negligence and seek to recover the costs to fix the Miss Amy. (Doc. 19). Defendants have denied any wrongdoing and have counterclaimed against Plaintiffs. They allege Plaintiffs negligently caused the collision "by the improper navigation and maintenance of Plaintiffs' vessel, its improper training of its crew, and other careless and negligent acts." (Doc. 47 at 7-12). The suit doesn't end there. The Southern

3

Belle's underwriters, XL Specialty Insurance Company and Navigators Insurance Company, have intervened to recover the money it has paid or may become liable to pay because of the collision. (Doc. 45). After years of discovery, the Movants now move for summary judgment. (Doc. 62). They also move to strike an affidavit of Plaintiffs' corporate representative. (Doc. 72). The Court discusses both motions, starting with summary judgment.

## DISCUSSION

**A. Motion for Summary Judgment**

*1. Legal standard*

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.*

For issues the movant must prove, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of*

*Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2012) (citation omitted). But for issues the non-movant bears the burden, the movant has two options: (1) point out a lack of evidence to support the nonmoving party's case; or (2) provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Green and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (citation omitted). "The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).

At the summary judgment stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002). It may not undertake credibility determinations or weigh the evidence when reviewing the record. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). What's more, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

*2. Discussion*

The Movants seek summary judgment on their counterclaims and Plaintiffs claims against them. So the Court discusses the claims separately.

5

i. Movants' Counterclaims

Movants argue there is undisputed evidence that Plaintiffs violated certain Coast Guard rules when operating the Miss Amy that triggers the common-law burden-shifting presumption called the *Pennsylvania* Rule, which is available when two vessels collide. The *Pennsylvania* Rule comes from a nineteenth century Supreme Court maritime decision. *The Pennsylvania*, 86 U.S. (19 Wall.) 125 (1873). There, the Court held that a party who violates a statutory or regulatory rule intended to prevent maritime accidents is presumed to have caused the accident:

> The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute.

*The Pennsylvania*, 86 U.S. (19 Wall.) 125, 136 (1873).

In other words, the *Pennsylvania* Rule requires the violating vessel to prove its violations could not have caused, or at least contributed to, the damage. *See Am. Dredging Co. v. Lambert*, 81 F.3d 127, 130 (11th Cir. 1996) ("When a ship is involved in a collision and that ship is in violation of a statutory rule designed to prevent collisions, the burden shifts to the

6

shipowner to prove that the violation was not a contributing cause of the collision." (citation omitted)); *see generally* Fischer v. S/Y NERAIDA, 508 F.3d 586, 593 (11th Cir. 2007). The Eleventh Circuit says, "The *Pennsylvania* Rule is not a rule of liability, but shifts the burden of proof as to causation. This burden is strict, but is not insurmountable." Hersh v. United States, No. 20-10926, 2022 WL 214842, at *10 (11th Cir. Jan. 25, 2022) (internal quotations omitted).

The *Pennsylvania* Rule's presumption is triggered when there is "(1) proof by a preponderance of the evidence of violation of a statute or regulation that imposes a mandatory duty; (2) the statute or regulation involved marine safety or navigation; and (3) the injury suffered was of a nature that the statute or regulation was intended to prevent." In re Backcountry Outfitters, Inc., No. 3:06CV234-MCR-MD, 2008 WL 516792, at *7 (N.D. Fla. Feb. 22, 2008), *aff'd*, 294 F. App'x 578 (11th Cir. 2008) (citation omitted). The first element is at issue.

Movants contend Plaintiffs violated Rules 5, 7, 16, and 18 of the United States Coast Guard International Rules of Navigation, as recognized in 33 C.F.R. §§ 80-82.[3] Further, according to Movants, Plaintiffs cannot show their violations could not have caused the collision.

---

[3] Both sides agree they were operating under the U.S. Coast Guard Navigational Rules, International during the time in question.

Rule 5 states, "Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." (Doc. 69 at 137). Movants argue that Miss Amy neither posted a look-out while piloting the vessel, nor monitored its navigational equipment and the direction of travel. For support, Movants rely on the declaration of Jason Vance, a deckhand on the Miss Amy at the time of the collision. (Doc. 62-1). Vance stated,

> [Captain Swendsen] had the problematic autopilot engaged and was facing away from the forward windows and toward the back in the direction of the galley talking to Mr. Lee[, another deckhand]. He was not looking forward out of the wheelhouse windows nor was he watching the instruments or radar while the F/V MISS AMY J was sailing forward and when the collision occurred.

(Doc. 62-1 at 318-19, ¶8).

To counter Vance, Plaintiffs provide Captain Swendsen's affidavit. (Doc. 69 at 18-20). He states he was on watch and saw the Southern Belle on his radar and AIS shortly after he fixed a mechanical issue. (Doc. 69 at 19, ¶ 12). He affirms that he "monitored and observed the course of Amy J and determined a corrective course adjustment of 10 degrees to the starboard side would avoid any possibility of collision," he continued to monitor the Southern Belle on the radar, and he made two more adjustments. (Doc. 69 at 19, ¶¶ 13,

8

15). But Captain Swendsen also admitted that he "left the steering house" shortly before the collision. (Doc. 69 at 19, ¶ 16).

Because the Court must draw all reasonable inferences in Plaintiffs' favor, it finds a genuine dispute of material fact exists over Rule 5. Based on the record, the Court cannot say that Captain Swendsen failed to monitor his navigation equipment, did not keep watch of the Southern Belle before the collision, or did nothing to avoid the collision. Defendants argue Captain Swenden's ten-degree changes were too small of incremental changes, but offer nothing other than their say so to explain why it was an unreasonable maneuver to have taken.

On to Rule 7. It says, "Every vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist." (Doc. 69 at 141). The next subsection says, "Proper use shall be made of radar equipment if fitted and operational, including long-range scanning to obtain early warning of risk of collision and radar plotting or equivalent systematic observation of detected objects." (Doc. 69 at 141). According to Movants, the Miss Amy failed to see the collision risk with the Southern Belle because it neither posted a lookout nor used, monitored, or answered its VHF radio, radar, and navigational chart system. They also contend that Captain Phan could not directly reach the Miss Amy through the AIS because its discrete

9

code did not display for him to make the call. That's why, according to Movants, Captain Phan used the radio.

Plaintiffs paint a different picture. They say that Captain Swendsen observed the Southern Belle on the Miss Amy's radar, monitored the situation, and made three course changes to avoid a collision. (Doc. 69 at 19, ¶¶ 12-13, 15). Plaintiffs also point to the affidavit of Henderson, their corporate representative, to challenge Movants' contention they did not have a functional AIS. (Doc. 69 at 16-17). Henderson states that "he inspected all operating equipment, including but not limited to, AIS and it was properly functioning immediately prior to the vessel's departure." (Doc. 69 at 16 at ¶ 4). Finally, Plaintiffs point to Captain Phan's testimony that the Southern Belle's electronic equipment was functional to cast doubt on his assertion that the Miss Amy's discrete code did not appear on his equipment. (Doc. 62-1 at 21:5-10).

Drawing all reasonable inferences in Plaintiffs' favor, a genuine dispute of material fact exists over whether they violated Rule 7. Based on the evidence, the Court cannot say—as a matter of law—the Miss Amy did not use all means appropriate to determine whether it would collide with the Southern Belle. Captain Swendsen testified to seeing the Southern Belle on his radar and changing course to avoid a collision. And if communication over the vessels' AIS would have prevented the crash, each side says their system was

operational before the collision. The Court cannot resolve these material factual disputes at this stage.

The final rules—16 and 18—work in tandem. Rule 18(a)(iii) requires a power-driven vessel underway to "keep out of the way of" another "vessel engaged in fishing." (Doc. 69 at 159). Rule 16 says, "Every vessel which is directed to keep out of the way of another vessel shall, so far as possible, take early and substantial action to keep clear." (Doc. 69 at 157). The Court need not look past Rule 18 to know a factual dispute prevents finding a violation. That's because the parties disagree about whether the Southern Belle was fishing during the collision. The dispute matters because if Southern Belle was fishing, then the Miss Amy needed to steer clear of it.[4] But the record is unsettled. Here's how it shakes out:

Vance, Miss Amy's deckhand, says the Southern Belle had her nets in the water and was actively fishing. (Doc. 62-1 at 318, ¶ 7). Captain Phan confirms Vance. (Doc. 62-1 at 292, 44:16-21). But Captain Swendsen says the opposite: "[I] had a clear and unobstructed vision of the incident, and it was readily apparent Southern Belle did not have [fishing] nets deployed, the doors

---

[4] The record is not clear if the parties dispute whether the Miss Amy was fishing at the time of collision. Captain Phan and Vance testified the Miss Amy was not fishing. Captain Swendsen, however, says he fixed the bilge pump, and, from there, the Miss Amy could fish when the vessels collided. (Doc. 69 at 12). But the Court need not delve into whether the Miss Amy was fishing because there's enough of a material dispute on the Southern Belle alone.

11

were not in the water, and the vessel was not actively shrimping at the time of the collision." (Doc. 69 at 19, ¶ 19). Because each side offers different evidence on whether the Southern Belle was fishing, the Court cannot say the Miss Amy was the give-way vessel and had it taken more action, the collision would not have occurred. The Court simply cannot resolve this he-said, he-said, he-said situation now—that's for trial.

At bottom, the record is unclear whether Plaintiffs violated Rules 5, 7, 16, and 18 to trigger the *Pennsylvania* Rule. The Court thus denies summary judgment on Movants' counterclaims.

### ii. Plaintiffs' Negligence Claim Against Defendants

Next, Movants seek summary judgment on Plaintiffs' negligence claim. They argue that Plaintiffs have not adduced enough evidence to show they acted negligently in causing the collision. They are right.

"In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1336 (11th Cir. 2012) (citation omitted). For negligence, a plaintiff must prove "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Id.* (citing *Zivojinovich v. Barner,* 525 F.3d 1059, 1067 (11th Cir. 2008)).

To show Defendants' negligence, Plaintiffs rely on "deposition testimony of the Defendant and by way of the personal affidavit provided by" Captain Swendsen. (Doc. 69 at 14). Yet Plaintiffs do not clarify whose deposition testimony they rely on, let alone cite specific portions of any testimony that points to Defendants' negligence. And the same is true for Captain Swendsen. The Court is unsure how his testimony proves negligence. This is especially true when Plaintiffs only provide generic rhetoric that Defendants owed some duty "stemming from the traditional concepts of prudent seamanship and reasonable care, statutory and regulatory rules, and recognized customs and uses." (Doc. 69 at 14).

Best the Court can tell, Plaintiffs believe Defendants owed a duty to protect against any collision because the Southern Belle was the give-way vessel. Plaintiffs seem to rely on Rule 18(a)(i), which requires a power-driven vessel to keep out of the way of "a vessel not under command," to show the breach of that duty. (Doc. 69 at 159). Plaintiffs elude that Captain Phan had reason to assume the Miss Amy was not under command during the collision because of its non-responsiveness to the Southern Belle's radio calls and the Southern Belle not using the AIS to make a direct call. So Plaintiffs maintain the Southern Belle was the give way vessel and needed to act to keep clear. But Plaintiffs offer no supporting case law or record citations to support why Captain Phan should have assumed the Miss Amy was not under command.

13

Plaintiffs need more on summary judgment to show the Southern Belle didn't take sufficient action to avoid the collision. The Court thus grants Movants summary judgment as to Plaintiffs' negligence claim.

### B. Movants' Motion to Strike

Movants ask the Court to strike the affidavit of Plaintiff's corporate representative (Doc. 69 at 16-17) because the substantive statements are made without personal knowledge and inadmissible at trial. (Doc. 72 at 4). Here are the problematic statements:

- "the crew members aboard the Miss Amy J. during the collision were experienced in the commercial fishing industry;"

- "after the collision the equipment was tested and inspected and was fully functional and operating;" and

- "The AIS on the Amy J was transmitting its discrete code at the time of the collision."

(Doc. 69 at 16). Collectively, Movants say the statements misrepresent the record, contradict his prior deposition testimony, are conclusory, are speculative, and misleading. Plaintiffs disagree. But the Court need not resolve this dispute because there are genuine issues of material fact in the record outside the challenged statements in Henderson's affidavit to warrant denying summary judgment. The Court thus denies the Motion to Strike.

## CONCLUSION

For the reasons explained, the Court grants in part and denies in part Movants' Motion for Summary Judgment (Doc. 62). The Court also denies Movants' Motion to Strike (Doc. 73). This action moves forward to a bench trial on Movants' negligence counterclaims against Plaintiffs.

Accordingly, it is now

**ORDERED:**

1. The Motion for Summary Judgment (Doc. 62) is **GRANTED in part and DENIED in part**. The Motion is granted as to Plaintiffs' negligence claim but is denied in all other respects.

2. The Motion to Strike the Affidavit of Dennis Henderson (Doc. 72) is **DENIED**.

3. The Court sets an **in-person** status conference for **June 7, 2022, at 11:30 a.m.** The parties must come prepared to discuss, among other things, dates for a bench trial during the July 2022 trial term.

**DONE** and **ORDERED** in Fort Myers, Florida on June 3, 2022.

*SHERI POLSTER CHAPPELL*
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

15